## Payne's Adm'r *versus* Patterson's Adm'rs.

1. Payne's land was sold by the sheriff to McClane, and deed delivered; afterwards, at Payne's request, Patterson, by parol, agreed to buy the land for Payne from McClane, to convey it to Payne upon his paying the purchase-money and interest, or if the land were sold for more than the purchase-money and interest, to pay Payne the overplus. Patterson sold the land for more than the purchase-money and interest. In an action by Payne to recover the "overplus," *held*, that there was no resulting trust nor a trust *ex maleficio* for Payne, and he could not recover the "overplus."

2. The transaction was not a mortgage, Payne having no interest in the land to mortgage, at the time of the agreement, and when McClane conveyed to Patterson.

3. The agreement being by parol, the Statute of Frauds prevented any interest in the land passing to Payne.

4. The defeasance is essential to a mortgage, whether by writing in the mortgage or separate from it, or it be established by parol

5. Without a valid agreement binding the grantee to reconvey or yield up to the grantor when the condition shall have been performed, it is not a mortgage.

6. Houser v. Lamont, 5 P. F. Smith 311, Maffitt v. Rynd, 19 P. F. Smith 380, distinguished. Penna. Life Ins. Co. v. Austin, 6 Wright 257, adopted.

October 15th 1875    Before Agnew, C. J., Sharswood and Mercur, JJ.

Error to the Court of Common Pleas of *Allegheny county:* Of October and November Term 1874, No. 204.

This was an action of assumpsit, brought October 6th 1866, by Alexander Payne against Alexander Patterson *et al.*, administrators, &c., of Abram Patterson, deceased.    The plaintiff having died pending the action, his death was suggested of record, and Sarah Payne, his administratrix, substituted as plaintiff.

The cause of action, as alleged by the plaintiff, arose under the following undisputed facts, given in evidence on the trial, December 16th 1873.—

Payne was the owner of a farm which was sold at sheriff's sale to Samuel McClane, but not conveyed to him for some weeks.    After the sheriff's sale, Payne and a friend went to Abram Patterson to induce him to purchase the property from McClane; Patterson agreed to take the farm and have it conveyed to himself; " and all he wanted was for Payne to pay him back the money at any time he could, with interest; he also told Payne if he could sell the farm at any time, to sell it, and all he wanted was his money and interest, Payne was to remain on the farm.    This arrangement was consummated."    The arrangement was that McClane would make a deed to Patterson, and that Patterson would advance the money to pay the judgment under which the farm was sold and costs, and Payne would pay Patterson as rapidly as possible the money advanced, with interest, till the whole should be paid: the amount was about $1900.    It was suggested by Payne's friend that the agreement should be put into writing, but Payne said there was no call for writings—he and Patterson were well acquainted.

On the 10th of September 1862 McClane conveyed to Patterson, and on the 30th of July 1864 Patterson sold and conveyed the farm to Conrad Ebberhardt for $3500.

There was evidence that Payne had paid Patterson interest— that he had requested Payne to pay what interest was still due, and that after the arrangement Patterson had recognised it in the terms as above stated, and had said that " he wanted as much to come out for Payne as possible."    Payne continued in possession until the sale to Ebberhardt.

[*Payne's Adm'r v. Patterson's Admr's.*]

The court (Stowe, J.) charged, that if the jury believed the arrangement as above stated was made; that in pursuance of it the title was made by McClane to Patterson; that Payne remained on the farm and paid interest on the purchase-money, &c., the plaintiff was entitled to recover the difference between the amount of the purchase and such interest as was unpaid and $3500, the amount for which Patterson sold to Ebberhardt, with interest from the time of that sale; subject to the opinion of the court on the above stated facts.

The jury found for the plaintiff for $2347.50, subject to the opinion of the court on the question reserved. The court afterwards entered judgment on the reserved question for the defendants, *non obstante veredicto.*

The plaintiff took a writ of error, assigning for error, the entering judgment for defendants.

*J. Glenn* (with whom was *S. A. McClung*), for plaintiff in error.—Patterson's advance of money on the security of an absolute conveyance was a mortgage: Harper's Appeal, 14 P. F. Smith 315; Houser *v.* Lamont, 5 Id. 311; Maffitt *v.* Rynd, 19 Id. 380; Sweetzer's Appeal, 21 Id. 264; Danzeisen's Appeal, 23 Id. 65; Haines *v.* Thomson, 20 Id. 434; McGinity *v.* McGinity, 13 Id. 38.

*J. M. Stoner* (with whom was *J. F. Edmundson*), for defendants in error.—Equity will not decree a purchaser to be a trustee when there is nothing more than the breach of a parol agreement, fraud to make one a trustee *ex maleficio*, must be fraud in the original contract: Jackman *v.* Ringland, 4 W. & S. 150; Barnet *v.* Dougherty, 8 Casey 372; Kellum *v.* Smith, 9 Id. 158; De France *v.* De France, 10 Id. 385; Sample *v.* Coulson, 9 W. & S. 66; Brawdy *v.* Brawdy, 7 Barr 157; Poorman *v.* Kilgore, 2 Casey 365; McBarron *v.* Glass, 6 Id. 135; Hogg *v.* Wilkins, 1 Grant 71; Kisler *v.* Kisler, 2 Watts 323; Sidle *v.* Walters, 5 Id. 391; Robertson *v.* Robertson, 9 Id. 32; Haines *v.* O'Conner, 10 Id. 320; Fox *v.* Heffner, 1 W. & S. 376; Pearsoll *v.* Chapin, 8 Wright 11; Bennett *v.* Pullmer, 13 Id. 155; Todd *v.* Campbell, 8 Casey 250; Nixon's Appeal, 13 P. F. Smith 282; Church *v.* Ruland, 14 Id. 441; McGinity *v.* McGinity, 13 Id. 38; Williard *v.* Williard, 6 Id. 125; Harris *v.* Harris, 20 Id. 171; Seylar *v.* Carson, 19 Id. 88; Beck *v.* Parker, 15 Id. 262; O'Hara *v.* Dilworth, 22 Id. 397; Kistler's Appeal, 23 Id. 393. Upon the point that the transaction was not a mortgage, they cited also Pennsylvania Life Insurance Company *v.* Austin, 6 Wright 257.

Mr. Justice MERCUR delivered the opinion of the court, November 16th 1874.

[Payne's Adm'r *v.* Patterson's Admr's.]

This is an action of assumpsit to recover a portion of the money received by the defendant's intestate, on a sale of real estate. The right to recover must rest on establishing that he held the land either as a trustee or as a mortgagee.

There is no allegation that McClane purchased at sheriff's sale under any arrangement with the plaintiff's intestate. There was no understanding between them that Payne should have any interest in the land or any share of the proceeds of a subsequent sale. Payne paid no part of the purchase-money. Hence there was no resulting trust; nor was there a trust *ex maleficio.* McClane then took and held the title unclogged with any equities in favor of Payne. McClane had an undoubted title. Payne had no pretended title. Such were the relative positions of those parties when the agreement was entered into between them and Patterson.

It is claimed by the plaintiff that this agreement as found by the jury establishes a valid mortgage in favor of Payne. It is admitted that Patterson did not enter into the agreement with any intent to cheat or defraud him. The plaintiff rests her right on the ground of contract. She contends that inasmuch as Patterson accepted the conveyance from McClane under the parol agreement proved, it establishes a mortgage in favor of Payne. A mortgage on what? It could be on his interest in the land only. We have already shown that he had no interest whatever in the land. He had no estate therein which could be bound by a mortgage, or to which a mortgage could attach. It is claimed, however, that this agreement between the three parties passed to him an interest in the land. We answer, that was a mere parol agreement as to him, and the defendant interposes the Statute of Frauds. It is unlike the case of Houser *v.* Lamont, 5 P. F. Smith 311, where the only party who could plead the statute waived it, and came into court to establish the parol contract.

It will be observed that there was no agreement to reconvey to McClane. It was that if Payne paid the amount of the purchase-money and interest, Patterson should convey to him. It was not conditional between the grantor and grantee. Under no circumstances was it to revert to the grantor. It was not conditional with the only person who had any interest to convey. It was not a mortgage as to McClane, and could not be as to Payne, to whom no *return* could be made. A mortgage is a defeasible deed. The defeasance is essential to the creation of every mortgage, whether it be evidenced by writing in or separate from the mortgage, or whether it be established by parol, it must nevertheless exist. The conditional right of restoration in the mortgagor must have been created. Without a valid agreement which binds the grantee to reconvey or yield up to the grantor when the conditions shall have been performed, it lacks the elements essentially necessary to make

it a mortgage. This is fatal to the plaintiff's case : Pennsylvania Life Insurance Company *v.* Austin, 6 Wright 257.

The case of Maffitt's Adm'rs *v.* Rynd *et al.*, 19 P. F. Smith 380, is not in conflict with this view. The foundation of the right of action in that case rested on a written agreement by which the money was raised for the purchase of the land in question for the use of Lamb. It expressly provided that on the payment of the advances and the other indebtedness from Lamb to them, they would convey to Lamb's wife. Maffitt and Old took a conveyance of the land with a full knowledge of this agreement and under a promise to carry it out in good faith.

Hence we conclude the learned judge was clearly correct in entering judgment *non obstante veredicto* upon the question reserved.                                   Judgment affirmed.